UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DINA PALIS | |
| Plaintiff, | Case No. 19-cv-06729 |
| v. | Judge John Robert Blakey |
| ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dina Palis challenges Defendants' denial of her naturalization application under the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA). She claims U.S. Citizenship and Immigration Services (USCIS) wrongfully denied her application. Plaintiff moves for summary judgment, seeking an order directing Defendants to naturalize her. [37]. Defendants oppose Plaintiff's motion and cross-move for summary judgment in their favor. [39]. For the reasons explained below, this Court denies Plaintiff's motion and grants Defendants' motion.

**I.   Background**[1]

Plaintiff, an Iraqi citizen and a legal permanent resident of the United States currently living in Des Plaines, Illinois, claims USCIS illegally denied her application for naturalization. [1] at ¶¶ 2, 9. She claims to meet all legal and procedural

---

[1] This Court takes these facts from the administrative record [31].

1

requirements for naturalization. [37] at 6. Defendants (the Secretary of the United States' Department of Homeland Security, which oversees, among other agencies, USCIS; the Director of USCIS; and USCIS) argue Plaintiff does not satisfy the naturalization requirements because she lacks the good moral character required for naturalization and did not have lawful permanent resident status when she applied to naturalize. [39] at 7–11. The discussion below outlines the undisputed facts relevant to these claims.

### A. Plaintiff's Adjustment to Legal Permanent Resident Status

Plaintiff married Yonan Abdulla Barrota on September 9, 2004 in Rio De Janeiro, Brazil. [31] at 181. Barrota, a United States Citizen, subsequently filed a Form I-130 Petition for Alien Relative (Form I-130) on Plaintiff's behalf. *Id.* at 377–78. USCIS approved the petition on January 31, 2005. *Id.* at 377. Barrota died on November 18, 2005. *Id.* at 182. His death certificate listed his marital status as divorced. *Id.*

About two months after Barrota's death, on January 31, 2006, Plaintiff sat for a consular interview in Brazil. [31] at 4. She attested to the truthfulness of the visa application and submitted a Form I-864 Affidavit of Support bearing Barrota's signature. Plaintiff failed to mention her husband's death during the interview. *Id.* at 377–89. USCIS approved the Form I-130 application. *Id.* Plaintiff then left Brazil and arrived in the United States on June 24, 2006. *Id.* at 337. She cleared quarantine protocols on June 26, 2006, and she entered the United States as a conditional permanent resident. *Id.* After approximately one year in the United States, Plaintiff

2

interviewed with USCIS on June 4, 2007, to have her conditions removed. *Id.* at 196. USCIS removed her conditions and granted her lawful permanent residence status. *Id.* at 201.

### B. Plaintiff's Naturalization Applications

USCIS received Plaintiff's first naturalization application on March 19, 2012. [31] at 96. Plaintiff attended naturalization interviews on July 31, 2012, and November 5, 2012. *Id.* USCIS denied the first application on January 29, 2014, because Plaintiff failed to mention her husband's death in her January 31, 2006 consular interview. *Id.* at 96, 124. Plaintiff appealed the decision, but USCIS affirmed the denial on June 19, 2014. *Id.* at 123–28.

Plaintiff tried again, filing another naturalization application on August 8, 2014. *Id.* at 35. She interviewed with USCIS on December 2, 2014. *Id.* at 35, 81. On August 4, 2017, USCIS again denied her application. *Id.* at 33–38. Plaintiff again appealed. *Id.* at 4. USCIS affirmed the denial on September 5, 2019, but vacated its August 4, 2017 decision as incomplete. *Id.* The September 5, 2019 denial explained that Plaintiff actually "shut off a line of questioning" during her January 31, 2006 consular interview when she failed to mention her husband's death. *Id.*

### C. Plaintiff's Claims

In response to the continued denial of her naturalization application, Plaintiff sued, seeking an order setting aside USCIS's August 4, 2017 and September 5, 2019 decisions, and asking this Court to grant her application for naturalization. [1] at 8. Defendants moved to dismiss the complaint [11], and the Court denied the motion,

3

[28], finding that Plaintiff had plausibly alleged that USCIS granted her the status of legal permanent resident in 2007, and that she remained eligible for naturalization, but that USCIS nonetheless denied same. [28] at 6. In particular, the Court noted, the limited record then before the Court failed to demonstrate that the timing of Barrota's death necessarily rendered Plaintiff ineligible for naturalization. *Id.*

After the Court denied Defendants' motion to dismiss, Defendants filed a certified copy of the administrative record on the docket in this case [31]. Plaintiff now seeks summary judgment based upon the complete record. [37]. Defendants oppose Plaintiff's motion and cross-move for summary judgment in their favor. [39].

## II. Legal Standard

A court may grant summary judgment when "no dispute as to any material fact" exists and the movant demonstrates that he is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue as to a material fact exists when the evidence presents a situation where a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing no such issue of fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986).

The non-moving party must identify the evidence creating a genuine issue as to a material fact. *Hutchinson v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). This requires showing more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 568 (1986). A mere "scintilla of evidence" supporting the non-movant's position

4

does not satisfy this burden. *Anderson*, 477 U.S. at 252. Additionally, a court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020).

### III. Analysis

Plaintiff moves for summary judgment, arguing that Defendants' denial of her naturalization application ran contrary to the relevant law. *See* [37]. Defendants oppose the motion and seek summary judgment in their favor, arguing that their denial was proper because Plaintiff failed (and fails) to meet all statutory requirements for naturalization. [39].

Under federal regulations, naturalization is only available if a person:

(1) Is at least 18 years of age;
(2) *Has been lawfully admitted as a permanent resident;*
(3) Has resided continuously within the United States, as defined under § 316.5 for a period of at least five years after having been lawfully admitted for permanent residence;
(4) Has been physically present in the United States for at least 30 months of the five years preceding the date of filing the application;
(5) Immediately preceding the filing of the application, or immediately preceding the examination on the application if the application was filed early pursuant to section 334(a) of the Act and the three-month period falls within the required period of residence under section 316(a) or 319(a) of the Act, has resided, as defined under § 316.5 for at least three months in a state or Service district having jurisdiction over the applicant's actual place of residence;
(6) Has resided continuously within the United States from the date of application for naturalization up to the time of admission for citizenship;
(7) *For all the relevant time periods under this paragraph, has been and continues to be a person of good moral character*, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States; and

5

> (8) Is not a person described in Section 314 of the Act relating to deserters of the United States Armed Forces or those persons who departed from the United States to evade military services in the United States Armed Forces.

8 C.F.R. § 316.2 (emphasis added). Plaintiff must meet every statutory requirement to naturalize. *Federenko v. United States*, 449 U.S. 490, 505 (1981). And, importantly, a naturalization applicant bears the burden of proof: an applicant must establish "by a preponderance of the evidence that she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b); *see also United States v. Ginsberg*, 243 U.S. 472, 475 (1917).

The parties dispute whether Plaintiff lawfully adjusted to permanent resident status and whether she possessed good moral character. *See* [37]; [39]. Plaintiff, who currently asserts legal permanent resident status, claims that she complied with all procedural requirements throughout the naturalization process, she met all of the requirements of INA section 204(l), and the time for the Attorney General to rescind her permanent resident status has passed. [37] at 3–5. In response, Defendants argue that Plaintiff did not lawfully adjust to permanent resident status because the death of her late husband automatically revoked her permanent resident status and their marriage did not last long enough for her to qualify for automatic conversion to a Form I-360 Petition for Amerasian, Widow(er) or Special Immigrant (Form I-360). [39] at 9. They also argue the failure to mention her husband's death during her January 31, 2005 consular interview constitutes a willful misrepresentation, demonstrating a lack of good moral character. *Id.* at 7–8.

6

The INA defines lawful permanent residence as the "status of having the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). Given the language in this definition, Courts defer to the Board of Immigration Appeals' (BIA) interpretation of this statutory definition. *See Estrada-Ramos v. Holder*, 611 F.3d 318, 321 (7th Cir. 2010). The BIA holds that lawful permanent resident status requires compliance with substantive legal requirements, not mere procedural regularity. *Id.* Relevant here, an individual does not have lawful permanent resident status if she obtained such status through fraud or has "otherwise not been entitled to it." *Id.*

An individual may lawfully adjust to permanent residence by having a United States citizen file a petition to have the individual classified as an immediate relative. 8 U.S.C. § 1154(a)(1)(A)(i). A spouse of a United States Citizen qualifies as an immediate relative. 8 U.S.C. § 1151(b)(2)(A)(i). Additionally, a surviving spouse of a deceased United States citizen may self-petition to qualify as an immediate relative if she had not legally separated from the citizen at the time of death and had not remarried. 8 U.S.C. § 1154(a)(ii). Conversely, a surviving spouse of a deceased United States citizen who does not self-petition may have her approved petition revoked if the citizen petitioner passes away before the surviving spouse commences her journey to the United States. 8 C.F.R. § 205.1(a)(3)(i)(C). DHS regulation 8 C.F.R. § 205.1(a)(3)(i)(C) outlines this process. It states:

> (3) if any of the following circumstances occur before the beneficiary's or self-petitioner's journey to the United Sates commences or, if the beneficiary or self-

>petitioner is an applicant for adjustment of status to that of a permanent resident, before the decision on his or her adjustment application becomes final: . . . (C) Upon the death of the petitioner.

*Id.* A plain reading of the regulation shows that if the citizen petitioner died before the beneficiary spouse commences her journey to the United States, the application approval automatically revokes at the time of death.

As the Court noted when it denied Defendants' motion to dismiss, however, exceptions to automatic revocation exist. *See* 8 C.F.R. § 205.1(a)(3)(i)(C)(1), (2). A petition does not automatically revoke upon the death of the petitioner if:

>(1) the petitioner is deemed under 8 C.F.R. 204.2(i)(1)(iv) to have been approved as a Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant under 8 C.F.R 204.2(b); or
>
>(2) U.S. Citizenship and Immigration Services (USCIS) determines, as a matter of discretion exercised for humanitarian reasons in light of a particular case, that it is inappropriate to revoke the approval of the petition and establishes that a person related to the principal beneficiary in one of the ways described in section 213(A)(f)(5)(B) of the Act is willing and able to file an affidavit of support under 8 C.F.R. part 213a as a substitute sponsor.

*Id.*

Under the first exception, a surviving spouse can have her Form I-130 automatically converted to a Form I-360 under 8 C.F.R. § 204.2(i)(1)(iv), so long as she qualifies as an immediate relative widow or widower in 8 C.F.R. § 204.2(b)(1). To qualify as an immediate relative under DHS regulations, the widow must: (i) have been married for at least two years to a United States citizen; (ii) file the petition within two years of the death of the citizen; (iii) not have been legally separated from the citizen spouse at the time of the citizen's death; and (iv) not have remarried. 8 C.F.R. § 204.2(b)(1).

In 2010, Congress amended the INA to adjust the statutory requirements for a widow or widower to qualify as an immediate relative. *See* DHS Appropriations Act, 2010, Pub. L. No. 111-83, § 568(c), 123 Stat. 2142, 2186 (hereinafter DHS Appropriations Act, § 568(c)). This amendment allowed a surviving spouse's Form I-130 to automatically convert to a Form I-360 as long as the spouse was not legally separated from her deceased spouse at the time of death and did not remarry. *See id.*; 8 U.S.C. § 1151(b)(2)(A)(i). It eliminated the previous requirement that a marriage must last longer than two years before the citizen's death for the surviving spouse to qualify as an immediate relative. *See* DHS Appropriations Act, § 568(c). This amendment applied to all applications "pending on or after the date of the enactment of this Act." *Id.* It also provided that beneficiaries whose citizen spouse died prior to enactment could file a petition under 8 U.S.C. § 1154(a)(1)(A)(ii) within two years of enactment to receive approval. *Id.*; *see* 8 U.S.C. § 1151(b)(2)(A)(i). Under 8 U.S.C. § 1154(a)(1)(A)(ii) the widow or widower can self-petition for immediate relative status.

DHS did not eliminate the two-year marriage requirement prior to the citizen petitioner's death requirement for widow or widower eligibility in its regulations, but it did issue policy guidance to align policy implementation with the amendment. *See* [31] at 289–304. Pursuant to such guidance, an approved Form I-130 automatically converts to an approved Form I-360 on the death of the petitioner no matter the length of the marriage. *Id.* at 291. This policy guidance comes with a caveat, however: it does not bind USCIS. The policy document specifically states:

> This PM is intended solely for the guidance of USCIS personnel in the performance of their official duties. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

*Id.* at 304. Furthermore, the policy guidance represents an interpretive rule. An interpretive rule simply states what the administrative officer thinks the statute or legislation means. *Metro. Sch. Dist. of Wayne Twp., Marion Cnty., Ind. v. Davila,* 969 F.2d. 485, 490 (7th Cir. 1992). Interpretative rules, including those contained in agency manuals, do not bind agencies. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Here, USCIS purported to interpret the 2010 amendments to the INA and their impact on policy implementation. *See* [31] at 289–304. It did so by analyzing the amendments' impact on existing laws, the changes the amendment created for existing legislation, and the impact the amendment had on certain regulations. *See id.* USCIS also looked at the Congressional intent behind the amendment and how it impacted certain regulations and policies. *Id.* at 292, 293, 301, 302. USCIS updated its Adjudicator's Field Manual to reflect this interpretation. *Id.* at 290–91. Given this, the document does not bind the agency despite stating "unless specifically exempted herein, this PM applies to and is binding on all USCIS employees." *Id.* at 289. Therefore, the regulatory requirements supersede any guidance issued in this policy statement.

The second exception to automatic revocation allows USCIS to exercise its discretion to determine whether humanitarian reasons make approval revocation inappropriate. 8 C.F.R. § 205.1(a)(3)(i)(C)(2). USCIS can only make such a

10

determination if "the principal beneficiary of the visa petition asks for reinstatement of the approval of the petition." *Id.* After the beneficiary makes the request, reinstatement depends "solely on the discretion of USCIS." *Afzal v. Holder*, 559 F.3d 677, 679 (7th Cir. 2009).

Congress also added section 204(l) to the INA in 2010, which can also provide relief to a widow or widower beneficiary. DHS Appropriations Act, 2010, Pub. L. No. 111-83, § 568(d), 123 Stat. 2142, 2187 (hereinafter DHS Appropriations Act, § 568(d)). This section requires USCIS to adjudicate certain visa petitions, including visa petitions for immediate relatives, notwithstanding the death of a qualifying relative. 8 U.S.C. § 1154(l). Importantly, however, the beneficiary must have resided in the United States at the time of the qualifying relative's death. *Id.*

If automatic revocation does occur, then the beneficiary becomes ineligible for permanent resident status. In *Bijan v. United States Citizenship and Immigration Services*, a case involving a mother petitioning for her son to join her in the United States, the court held that approval of a petition for an unmarried son automatically revoked when the son got married, justifying the denial of the son's subsequent naturalization application. 900 F.3d 942, 945 (7th Cir. 2018).

While *Bijan* ultimately turned on the plaintiff's fraud, an individual granted permanent resident status based on a mistake of the government may also lack lawful permanent resident status because they might have "otherwise not been entitled" to such status. *See, e.g., Turfah v. USCIS*, 845 F.3d 668 (6th Cir. 2017) (citing *In Re Koloamatangi*, 23 I. & N. Dec. 548, 549). In *Turfah*, the plaintiff, a nineteen-year-old

11

arriving on a visa for an "unmarried child under the age of 21 who was 'accompanying or following to join' his father, the principal visa holder,'" arrived one month before his father. *Id.* at 670. USCIS mistakenly granted the plaintiff permanent resident status despite his premature arrival. *Id.* The Sixth Circuit concluded that the plaintiff did not lawfully adjust to permanent resident status because he arrived before his father, not with his father or after his father, as the visa required. *Id.* at 674. It did not matter that the government committed the error or that the plaintiff did not commit fraud. *Id.* The Plaintiff "had not otherwise been entitled" to permanent residency, so he did not have lawful permanent resident status for naturalization purposes. *Id.*

Furthermore, a naturalization applicant who did not meet the substantive requirements to lawfully adjust to permanent resident status cannot rely on the statute of limitations for recission to show that she met the permanent resident requirement. *See* 8 U.S.C. 1256(a). The statute plainly precludes this result. It states:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provision of section 1255 or section 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.

12

*Id.*

In *Mozden v. Holder*, the Seventh Circuit held that the statute of limitations applies to recission of permanent resident status. 622 F.3d 680, 684 (7th Cir. 2010). Immigration laws distinguish recission and removal proceedings from naturalization proceedings. For example, 8 U.S.C. § 1429 states "the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien . . . shall not be deemed binding in any way with respect to the question of whether such person has established his eligibility for naturalization as required by this subchapter."

Furthermore, as the Third Circuit stated in *Saliba v. Attorney General of the United States*, 8 U.S.C. § 1256(a) deals with recission and removal proceedings, but not with naturalization proceedings. 828 F.3d 182, 196 (3d Cir. 2016). In that case, USCIS denied the plaintiff's naturalization application because he lacked lawful permanent residency. *Id.* at 185. USCIS had mistakenly granted the plaintiff lawful permanent resident status even though he was statutorily ineligible because he obtained temporary protected status through falsified documents. *Id.* at 185. The court held that the Attorney General could not initiate removal proceedings because of the statute of limitations, but the plaintiff did not have lawful permanent resident status for naturalization purposes. *Id.* at 195. Although not binding, this case illustrates that the statute of limitations for permanent resident status recission does not impact lawful permanent resident status for naturalization.

Thus, as a practical matter, it does not matter if Plaintiff here lied about her husband or willfully failed to mention his death; nor does it matter if they were married or legally separated when he died. When he died, with her still living in Brazil, her approval automatically revoked, and the Court cannot say that USCIS's denial of her naturalization applications was improper on such a record. DHS regulations make it clear that if a citizen spouse dies before a beneficiary leaves for the United States, the application revokes. The 2010 Congressional amendment does not apply to this case and Plaintiff cannot rely on USCIS policy guidance because it does not bind the agency. This is true even if the result might seem unfair to the applicant and even if the statute of limitations for recission has passed.

Plaintiff did not lawfully adjust to permanent resident status after her approval revoked and she does not qualify for any of the exceptions to automatic revocation. Plaintiff's approved Form I-130 revoked automatically under 8 C.F.R. § 205.1(a)(3)(i)(C), because she had not commenced her journey to the United States before her husband died on November 18, 2005. [31] at 182. Indeed, Plaintiff had her consular interview in Brazil on January 31, 2006. *Id.* at 377.

Nothing in the record indicates Plaintiff qualifies for either exception to automatic revocation. She does not qualify for the first exception under 8 C.F.R. § 205.1(a)(3)(i)(C)(1), because her marriage did not last for two years before her husband died and the 2010 amendment did not impact cases prior to October 28, 2009. DHS Appropriations Act, 2010, § 568(c). Plaintiff married her husband September 9, 2004, and he died November 18, 2005. [31] at 181–82. Plaintiff's

14

petition revoked in 2005 when her husband died. *Id.* at 377. She also cannot rely on USCIS's statement in its Adjudicator's Field Manual that field adjudicators should treat previously approved applications that revoked because of the two years of marriage requirement as properly approved. *See id.* at 291. These statements do not bind the agency. Furthermore, she does not qualify for the second exception under 8 C.F.R. § 205.1(a)(3)(i)(C)(2), because nothing in the record indicates she filed a written request for reinstatement. *See generally id.* Without a request, USCIS cannot grant humanitarian reinstatement. *See* 8 C.F.R. § 205.1(a)(3)(i)(C)(2).

Nor can Plaintiff rely on INA section 204(l) for relief. While the statute does say that spousal immediate relatives should have their cases adjudicated notwithstanding the death of the qualifying relative, this only applies if the spouse resided in the United States at the time of the qualifying relative's death. 8 U.S.C. § 1154(l). Plaintiff did not enter the United States until June 26, 2006, more than seven months after her husband died. [31] at 337, 182. Thus, she did not reside in the United States when he died. *Id.* Also, this provision simply did not apply when Plaintiff's approval revoked. The approval revoked upon her husband's death in 2005 and the amendment did not take effect until October 28, 2009. *See* DHS Appropriations Act, § 568(d).

Finally, Plaintiff cannot claim that she has lawful permanent resident status for naturalization purposes based upon the fact that the Attorney General did not rescind her status within the five-year statute of limitations. The statute of

limitations does not implicate naturalization proceedings. Therefore, it does not impact her lawful permanent resident status for naturalization purposes.

Plaintiff's situation is, to be sure, unfortunate. But, as this Court previously cautioned, the Court cannot grant her naturalization application on equity alone. *See INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988). While USCIS mistakenly granted her permanent resident status, she did not substantively meet the requirements for such status because her approved Form I-130 revoked. Therefore, she did not have lawful permanent residency for the purposes of naturalization and USCIS properly denied her application.

### III. Conclusion

For the reasons explained above, this Court grants Defendants' motion for summary judgment [39] and denies Plaintiff's motion for summary judgment [37]. The Court directs the Clerk to enter judgment in Defendants' favor. All dates and deadlines are stricken. Civil case terminated.

Dated: March 14, 2022

                                            Entered:

                                            John Robert Blakey
                                            United States District Judge